BRENT J. NEWELL (State Bar No. 210312)
LAW OFFICE OF BRENT J. NEWELL
245 Kentucky Street, Suite A4
Petaluma, CA 94952
Tel: (661) 586-3724
brent@lawofficenewell.com

Attorney for Plaintiffs
Committee for a Better Arvin,
Little Manila Rising,
Medical Advocates for Healthy Air,
and Sierra Club

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMITTEE FOR A BETTER ARVIN, LITTLE MANILA RISING, MEDICAL ADVOCATES FOR HEALTHY AIR, and SIERRA CLUB, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN, in his official capacity as Administrator of the United States Environmental Protection Agency, and JOSH F.W. COOK, in his official capacity as Regional Administrator for Region 9 of the United States Environmental Protection Agency, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

COMPLAINT

# INTRODUCTION

1. Plaintiffs Committee for a Better Arvin, Little Manila Rising, Medical Advocates for Healthy Air, and the Sierra Club (collectively "Air Advocates") file this Clean Air Act citizen suit to compel Defendants to perform their nondiscretionary duty and protect public health from fine particulate matter with an aerodynamic diameter of 2.5 microns or less ("PM2.5") in the San Joaquin Valley of California.

2. Defendants United States Environmental Protection Agency, Lee Zeldin, and Josh F.W. Cook (collectively "EPA") have violated the Clean Air Act by failing to make a determination of attainment, or a finding of failure to attain, for the 2006 24-hour PM2.5 National Ambient Air Quality Standard in the San Joaquin Valley ("attainment determination").

3. Air pollution in the San Joaquin Valley is a public health crisis. The American Lung Association ranks Valley counties among the worst in the United States for PM2.5 and ozone.

4. The Clean Air Act is a model of cooperative federalism, whereby EPA sets health-based National Ambient Air Quality Standards ("NAAQS" or "standards") and the states develop the plans and strategies to attain those standards by the applicable attainment dates. States submit their plans and strategies to EPA for review and approval. EPA shall approve a submission as part of the SIP if it meets the Act's minimum requirements. EPA and citizens may enforce the EPA-approved SIP as a matter of federal law to hold states and regulated entities accountable.

5. In 2006, EPA established a NAAQS for PM2.5 of 35 µg/m$^3$ averaged over a 24-hour period ("2006 24-hour PM2.5 standard").

6. EPA approved California's request for a maximum five-year extension of the applicable serious area attainment date, extending the attainment date from December 31, 2019 to December 31, 2024.

7. EPA shall, as expeditiously as practicable but no later than June 30, 2025, determine whether the San Joaquin Valley attained, or failed to attain, the 2006 24-hour PM2.5 standard. To date, EPA has failed to make an attainment determination.

# JURISDICTION

8. This Court has jurisdiction over this action to compel the performance of a

COMPLAINT

1

nondiscretionary duty pursuant to 42 U.S.C. § 7604(a)(2) (citizen suit provision of the Clean Air Act) and 28 U.S.C. § 1331 (federal question jurisdiction).

9. The declaratory and injunctive relief Air Advocates request is authorized by 28 U.S.C. §§ 2801(a) and 2202, and 42 U.S.C. § 7604.

## NOTICE

10. On July 2, 2025, Air Advocates provided EPA written notice of the claims stated in this action at least 60 days before commencing this action (hereafter "Notice Letter"), as required by Clean Air Act section 304(b)(2), 42 U.S.C. § 7604(b)(2) and 40 C.F.R. §§ 54.2 and 54.3. A copy of the Notice Letter, sent by certified mail, return receipt requested, is attached as Exhibit 1. Although more than 60 days have elapsed since Air Advocates provided written notice, EPA has failed to make an attainment determination for the 2006 24-hour PM2.5 standard in the San Joaquin Valley. EPA has violated and continues to violate the Clean Air Act.

## VENUE

11. Venue lies in the Northern District of California pursuant to 28 U.S.C. § 1391(e)(1), because the Regional Administrator for Region 9 is located in San Francisco County and because EPA's alleged violations relate to the duties of the Regional Administrator in San Francisco.

## INTRADISTRICT ASSIGNMENT

12. Because the failure to perform a nondiscretionary duty alleged in this Complaint relates to the duties of the Regional Administrator located in San Francisco County, assignment to the San Francisco Division or the Oakland Division of this Court is proper under Civil L.R. 3-2(c) and (d).

## PARTIES

13. Plaintiff COMMITTEE FOR A BETTER ARVIN is a nonprofit corporation organized and existing under the laws of the State of California, and based in Arvin, California. COMMITTEE FOR A BETTER ARVIN brings this action on behalf of itself and its members. The mission of COMMITTEE FOR A BETTER ARVIN is to improve the quality of life in Arvin, to inform and unite the community, to address problems facing the community, and to secure equality for all residents. COMMITTEE FOR A BETTER ARVIN and its members have engaged in advocacy for improved local and regional air quality for many years.

14. Plaintiff LITTLE MANILA RISING is a nonprofit corporation organized and existing under the laws of the State of California, and based in Stockton, California. LITTLE MANILA RISING serves the South Stockton community, developing equitable solutions to the effects of historical marginalization, institutionalized racism, and harmful public policy. LITTLE MANILA RISING offers a wide spectrum of programs that address education, environment, redevelopment, public health, and air quality. LITTLE MANILA RISING values all people's unique and diverse experiences and wishes to see the residents of South Stockton enjoy healthy, prosperous lives.

15. Plaintiff MEDICAL ADVOCATES FOR HEALTHY AIR is a nonprofit organization organized and existing under the laws of the State of California, and based in Fresno, California. MEDICAL ADVOCATES FOR HEALTHY AIR brings this action on behalf of itself and its members. MEDICAL ADVOCATES FOR HEALTHY AIR's members consist of medical professionals living in the San Joaquin Valley who regularly treat patients suffering from respiratory ailments that are caused or exacerbated by the Valley's unhealthy levels of air pollution. The mission of MEDICAL ADVOCATES FOR HEALTHY AIR is to advocate for the expeditious attainment of state and federal health-based air quality standards in the San Joaquin Valley through public education, litigation, and other means.

16. Plaintiff SIERRA CLUB is a nonprofit corporation organized and existing under the laws of the State of California, with its headquarters located in San Francisco, California. SIERRA CLUB brings this action on behalf of itself and its members. As a national organization dedicated to the protection of public health and the environment, including air quality, SIERRA CLUB has members living in all eight counties comprising the San Joaquin Valley.

17. Plaintiffs COMMITTEE FOR A BETTER ARVIN, LITTLE MANILA RISING, MEDICAL ADVOCATES FOR HEALTHY AIR, and SIERRA CLUB are persons within the meaning of section 302(e) of the Clean Air Act, 42 U.S.C. § 7602(e), and may commence a civil action under section 304(a) of the Act, 42 U.S.C. § 7604(a).

18. Members of Plaintiffs COMMITTEE FOR A BETTER ARVIN, LITTLE MANILA RISING, MEDICAL ADVOCATES FOR HEALTHY AIR and SIERRA CLUB live, raise their families, work, and recreate in the San Joaquin Valley. They are adversely affected by exposure to levels

COMPLAINT

3

of PM2.5 and ozone air pollution that exceed the health-based National Ambient Air Quality Standards. The adverse effects of such pollution include actual or threatened harm to their health, their families' health, their professional, educational, and economic interests, and their aesthetic and recreational enjoyment of the environment in the San Joaquin Valley.

19. Members of Plaintiff MEDICAL ADVOCATES FOR HEALTHY AIR are medical professionals who treat patients suffering from PM2.5 and ozone related health effects, have participated in substantial research on the health effects of PM2.5 and ozone, and are concerned about the adverse health effects that PM2.5 and ozone have on their patients, sensitive groups, and the public.

20. EPA's failure to make an attainment determination for the 2006 24-hour PM2.5 standard as alleged in this Complaint deprives Air Advocates' members of certain procedural rights associated with EPA's required attainment determination, including notice of, and opportunity to comment on, EPA's action.

21. EPA's failure to make an attainment determination for the 2006 24-hour PM2.5 standard as alleged in this Complaint causes Air Advocates members' injuries because EPA has failed to implement the Clean Air Act's remedial scheme. An EPA finding that the San Joaquin Valley has failed to attain the 2006 24-hour PM2.5 standard shall trigger the implementation of attainment contingency measures. A finding of failure to attain shall also require California to submit, within 12 months of the applicable attainment date, a "Five Percent Plan" required by section 189(d) of the Act, 42 U.S.C. 7513a(d). EPA's failure to implement the remedial scheme denies members the benefits of emissions reductions from contingency measures and the new Five Percent Plan.

22. The Clean Air Act violations alleged in this Complaint have injured and continue to injure Air Advocates' members. The injunctive relief requested in this lawsuit would redress these injuries by compelling Defendants to make an attainment determination, which Congress required as an integral part of the remedial scheme for improving air quality in areas violating the NAAQS.

23. A finding of failure to attain the 2006 24-hour PM2.5 standard would redress these injuries by triggering implementation of attainment contingency measures and requiring California to submit the Five Percent Plan required by section 189(d) of the Act, 42 U.S.C. § 7513a(d).

24. Injunctive relief would redress members' procedural injuries by providing notice and an

opportunity to comment on the attainment determination.

25. The declaratory relief requested in this lawsuit would redress Air Advocates members' injuries by declaring that Defendants have a duty to make an attainment determination. Declaratory relief would further redress these injuries by declaring that Defendants have violated the duty to make an attainment determination.

26. Defendant UNITED STATES ENVIRONMENTAL PROTECTION AGENCY is the federal agency Congress charged with implementation and enforcement of the Clean Air Act. As described below, the Act assigns to the UNITED STATES ENVIRONMENTAL PROTECTION AGENCY certain nondiscretionary duties.

27. Defendant LEE ZELDIN is sued in his official capacity as Administrator of the United States Environmental Protection Agency. LEE ZELDIN is charged in that role with taking various actions to implement and enforce the Clean Air Act, including the actions sought in this Complaint.

28. Defendant JOSH F.W. COOK is sued in his official capacity as Regional Administrator for Region 9 of the United States Environmental Protection Agency. JOSH F.W. COOK is responsible for implementing and enforcing the Clean Air Act in Region 9, including the actions sought in this Complaint. Region 9 includes California and the San Joaquin Valley air basin.

## STATUTORY FRAMEWORK

29. The Clean Air Act establishes a partnership between EPA and the states for the attainment and maintenance of the National Ambient Air Quality Standards. *See* 42 U.S.C. §§ 7401-7515. Under the Act, EPA has set health-based standards for six pollutants, including ozone and PM2.5. States must adopt a State Implementation Plan ("SIP") that contains enforceable emissions limitations necessary to attain the standards and meet applicable requirements of the Act. 42 U.S.C. §§ 7401(a)(1), (a)(2)(A); 7502(c)(6). States must submit all such plans and plan revisions to the EPA. 42 U.S.C. § 7410(a)(1).

30. State Implementation Plans must include enforceable emissions standards and limitations necessary to attain the NAAQS by the applicable attainment date, must demonstrate reasonable further progress, and must include contingency measures to take effect if the plan fails to meet reasonable further progress or attain the NAAQS by the applicable attainment date. 42 U.S.C. § 7502(c).

COMPLAINT

5

31. State Implementation Plans must demonstrate that the state's control strategy will ensure attainment of the standard by the applicable attainment date. *See* 42 U.S.C. § 7511a(c)(2)(A); *see also* 40 C.F.R. § 51.112(a) ("Each plan must demonstrate that the measures, rules, and regulations contained in it are adequate to provide for the timely attainment and maintenance of the national standard that it implements.").

32. A State Implementation Plan must demonstrate reasonable further progress by showing that the emission inventory for the area continues to decline according to milestones every three years. 42 U.S.C. § 7511a(c)(2)(B). The Act defines reasonable further progress to mean "such annual incremental reductions in emissions of the relevant air pollutant as are required by this part or may reasonably be required by the Administrator for the purpose of ensuring attainment of the applicable national ambient air quality standard by the applicable date." 42 U.S.C. § 7501(1).

33. A State Implementation Plan must include contingency measures that take effect without any further action by the state upon a plan's failure to meet Reasonable Further Progress, failure to attain the standard by the applicable date, failure to meet a quantitative milestone, or failure to submit a quantitative milestone report. 42 U.S.C. § 7502(c)(9); 40 C.F.R. § 51.1014(a).

34. Areas that EPA designates as nonattainment for a National Ambient Air Quality Standard must attain the standard by the applicable attainment date. Section 179(c)(1) of the Clean Air Act, 42 U.S.C. § 7509(c)(1), requires EPA to make an attainment determination—a finding that an area either attained or failed to attain a standard—as expeditiously as practicable but no later than six months after the area's applicable attainment date. A related provision for particulate matter nonattainment areas requires an attainment determination within six months following the area's applicable attainment date. 42 U.S.C. § 7513(b)(2).

35. The Clean Air Act requires implementation of contingency measures upon the failure of an area to make reasonable further progress or attain a NAAQS by the applicable attainment date. 42 U.S.C. §§ 7502(c)(9).

36. The Clean Air Act requires a serious nonattainment area which fails to attain the standard by the applicable attainment date to submit a Five Percent Plan within 12 months of that date. 42 U.S.C. § 7513a(d). The Five Percent Plan shall provide for attainment of the standard and annual emissions

COMPLAINT

6

1 reductions of particulate matter or particulate matter precursors of not less than five percent.

2  37.  If EPA fails to perform a non-discretionary duty, including failing to make an attainment
3 determination, then the Act allows any person to bring suit to compel EPA to perform its non-
4 discretionary duty. 42 U.S.C. § 7604(a)(2).

**FACTUAL BACKGROUND**

**Fine Particulate Matter (PM2.5) Background**

7  38.  PM2.5 is a directly emitted pollutant and forms secondarily in the atmosphere by the
8 precursor pollutants NOx, ammonia, sulfur oxides, and VOC. Secondary PM2.5 forms primarily during
9 the winter in the San Joaquin Valley.

10  39.  Short-term exposure to PM2.5 pollution causes premature death, causes decreased lung
11 function, exacerbates respiratory disease such as asthma, and causes increased hospital admissions.
12 Long-term exposure causes development of asthma in children, causes decreased lung function growth
13 in children, exacerbates respiratory disease such as asthma, increases the risk of death from
14 cardiovascular disease, and increases the risk of death from heart attacks. Individuals particularly
15 sensitive to PM2.5 exposure include older adults, people with heart and lung disease, and children.

16  40.  According to the American Lung Association's State of the Air 2025 report, the San
17 Joaquin Valley counties of Kern, Tulare, Fresno, and Kings rank as the first, third, fifth, and sixth most
18 polluted counties in the United States for short-term exposure to PM2.5, respectively. For long-term
19 exposure to PM2.5, the report ranks Kern, Tulare, Fresno, Kings, and Stanislaus as the first, second,
20 third, fifth, and eighth most polluted counties in the United States, respectively.

21  41.  In 2006, EPA promulgated the 2006 24-hour PM2.5 standard. To better protect the public
22 from short-term exposures, EPA increased the stringency of the national primary annual 24-hour PM2.5
23 NAAQS by lowering the allowable ambient concentration from 65 $\mu g/m^3$ to 35 $\mu g/m^3$. 71 Fed. Reg.
24 61144, 61145 (Oct. 17, 2006).

25  42.  In 2016, EPA determined that the San Joaquin Valley could not practically attain the
26 standard by the moderate area attainment date of December 31, 2015, and reclassified the Valley as a
27 serious nonattainment area. 81 Fed. Reg. 2993, 2993 (Jan. 20, 2016). As a serious nonattainment area,
28 EPA approved December 31, 2019 as the applicable attainment date. *Id*.

COMPLAINT
7

43. In 2020, California requested—and EPA approved—a five-year extension of the attainment date for the 2006 24-Hour PM2.5 standard, as authorized by section 188(e) of the Act, 42 U.S.C. § 7513(e). 85 Fed. Reg. 44192, 44205 (July 22, 2020). As a serious nonattainment area receiving a section 188(e) extension, EPA approved December 31, 2024 as the applicable attainment date. *Id*. EPA also approved the attainment demonstration for the plan to attain the 2006 24-hour PM2.5 standard, which relied on an "aggregate commitment" to achieve a specific amount of emissions reductions. *Id*. at 44204–44206

44. In 2022, the Ninth Circuit Court of Appeals held that EPA's approval of the "aggregate commitment" was arbitrary and capricious when there was no rational connection between the facts found by the EPA regarding a funding shortfall and the EPA's conclusion that California will nevertheless meet the attainment goals." *Medical Advocates for Healthy Air v. EPA*, No. 20-72780, 2022 WL 1109656 at *2 (9th Cir. Apr. 13, 2022). The court "vacate[d] the portion of the final rule that determined that the relevant aggregate commitments satisfied the second factor of the three-factor test and remand[ed] to the EPA for further consideration of the second factor, and for further proceedings consistent with this decision." *Id*. at *3.

45. The San Joaquin Valley has not attained the 2006 24-hour PM2.5 standard. EPA data show PM2.5 design values for 2017-2019, 2018-2020, 2019-2021, 2020-2022, 2021-2023, and 2022-2024 at 64 µg/m$^3$, 72 µg/m$^3$, 66 µg/m$^3$, 65 µg/m$^3$, 48 µg/m$^3$, and 48 µg/m$^3$ respectively, well above the 35 µg/m$^3$ design value necessary to attain the standard. EPA published these design value data in tab 3b of a spreadsheet available on EPA's website a https://www.epa.gov/system/files/documents/2025-06/pm25_designvalues_2022_2024_final_05_28_25.xlsx, and attached as Exhibit 2.

**Ozone Background**

46. Ground-level ozone is formed by a reaction between NOx and VOC in the presence of heat and sunlight. Unlike ozone in the upper atmosphere which is formed naturally and protects the Earth from ultraviolet radiation, ozone at ground level is primarily formed from anthropogenic pollution.

47. Short-term exposure to ozone irritates lung tissue, decreases lung function, exacerbates respiratory disease such as asthma and Chronic Obstructive Pulmonary Disease (COPD), increases susceptibility to respiratory infections such as pneumonia, all of which contribute to an increased

COMPLAINT

8

likelihood of emergency department visits and hospitalizations. Short-term exposure to ozone also increases the risk of premature death, especially among older adults. Long-term exposure to ozone causes asthma in children, decreases lung function, damages the airways, leads to development of COPD, and increases allergic responses.

48. According to the American Lung Association's State of the Air 2025 report, the San Joaquin Valley counties of Tulare, Kern, and Fresno rank as the fourth, fifth, and seventh most ozone-polluted counties in the United States, respectively.

49. On July 18, 1997, EPA promulgated a national primary ozone NAAQS of 0.080 parts per million averaged over an 8-hour period to replace the less stringent 1-hour ozone NAAQS ("1997 8-hour ozone standard"). 62 Fed. Reg. 38856 (July 18, 1997); 40 C.F.R. § 50.9(b) (2003).

50. Effective May 27, 2008, EPA completed a review of the 1997 8-hour ozone standard, found it necessary to lower the allowable ambient concentration of ozone to 0.075 parts per million, and promulgated the national primary NAAQS for ozone ("2008 8-hour ozone standard"). 73 Fed. Reg. 16436 (March. 27, 2008); 40 C.F.R. § 50.15. EPA revoked the 1997 8-hour ozone standard as part of the transition to the 2008 standard, but retained the attainment contingency measures and the major stationary source fee requirement for the 1997 8-hour ozone standard as controls to help ensure attainment of the 2008 8-hour ozone standard. 40 C.F.R. §§ 51.1100(o)(13), (15), 51.1105(a)(1).

51. Effective June 4, 2010, EPA reclassified the San Joaquin Valley to an extreme ozone nonattainment area for the 1997 8-hour ozone standard and established June 15, 2024 as the applicable attainment date. 75 Fed. Reg. 24409, 24415 (May 5, 2010).

52. On April 14, 2025, Plaintiffs COMMITTEE FOR A BETTER ARVIN, MEDICAL ADVOCATES FOR HEALTHY AIR, and SIERRA CLUB filed a complaint to compel EPA to make an attainment determination for the 1997 8-hour ozone standard in *Committee for a Better Arvin v. EPA*, No. 3:25-cv-03326-MMC (N.D. Cal.).

53. On July 10, 2025, EPA published a proposed finding of failure to attain the 1997 8-hour ozone standard in the San Joaquin Valley. 90 Fed. Reg. 30607 (July 10, 2025).

///

///

COMPLAINT

9

**FIRST CLAIM FOR RELIEF**

**Failure to Perform a Non-Discretionary Duty**

**to Make an Attainment Determination**

**(42 U.S.C. §§ 7509(c)(1), 7513(b)(2))**

54. Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1-53.

55. Effective February 19, 2016, EPA determined that the San Joaquin Valley could not practicably attain the 2006 24-hour PM2.5 standard by the moderate area attainment date of December 31, 2015, and reclassified the Valley as a serious nonattainment area. 81 Fed. Reg. 2993, 2993 (Jan. 20, 2016). As a serious nonattainment area, EPA approved December 31, 2019 as the applicable attainment date. *Id*.

56. Effective August 21, 2020, EPA approved California's request for a five-year extension of the applicable attainment date from December 31, 2019 to December 31, 2024. 85 Fed. Reg. 44192, 44205 (July 22, 2020).

57. Defendants have a mandatory duty to determine whether the San Joaquin Valley attained or failed to attain the 2006 24-hour PM2.5 standard no later than six months after the applicable December 31, 2024 attainment date, or no later than June 30, 2025. 42 U.S.C. §§ 7509(c)(1), 7513(b)(2).

58. In the alternative, if the vacatur of the approval of the aggregate commitments in *Medical Advocates for Healthy Air v. EPA*, No. 20-72780, 2022 WL 1109656 (9th Cir. Apr. 13, 2022), also vacated the five-year extension of the applicable attainment date, then Defendants have a mandatory duty to determine whether the San Joaquin Valley attained or failed to attain the 2006 24-hour PM2.5 standard no later than June 30, 2020. 42 U.S.C. §§ 7509(c)(1), 7513(b)(2).

59. Defendants have failed and continue to fail to make an attainment determination.

60. By failing to make an attainment determination, Defendants have violated and continue to violate their nondiscretionary duty to make an attainment determination pursuant to Clean Air Act sections 179(c)(1) and 188(b)(2), 42 U.S.C. §§ 7509(c)(1); 7513(b)(2).

61. This Clean Air Act violation constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of the Act's citizen suit provision. 42 U.S.C. § 7604(a)(2). EPA's violation of the Act is ongoing and will

COMPLAINT

10

continue unless remedied by this Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the Court grant the following relief:

A. DECLARE that Defendants have a duty by June 30, 2025 to make an attainment determination of whether the San Joaquin Valley attained or failed to attain the 2006 24-hour PM2.5 standard;

B. DECLARE that Defendants have violated and continue to violate the Clean Air Act by failing to make an attainment determination of whether the San Joaquin Valley attained or failed to attain the 2006 24-hour PM2.5 standard;

C. ISSUE preliminary and permanent injunctions directing the Defendants to take final action on the attainment determination for the 2006 24-hour PM2.5 standard by December 1, 2025;

D. RETAIN jurisdiction over this matter until such time as the Defendants have complied with their nondiscretionary duties under the Clean Air Act;

E. AWARD to Plaintiffs their costs of litigation, including reasonable attorney's and expert witness fees; and

F. GRANT such additional relief as the Court may deem just and proper.

Dated: September 2, 2025                    Respectfully Submitted,

                                            LAW OFFICE OF BRENT J. NEWELL

                                            /s/ Brent J. Newell
                                            Brent J. Newell
                                            Attorney for Plaintiffs

COMPLAINT

11